Baird, &c., v. Bruning, &c.

84   645
o113 514

[This opinion was ordered to be reported when delivered, but the fact was overlooked at the time, and it has never been reported.]

CASE 83—PETITION EQUITY—JUNE 24, 1882.

## Baird, &c., v. Bruning, &c.

APPEAL FROM BOYD CIRCUIT COURT.

A MARRIED WOMAN MAY BIND HER SEPARATE ESTATE or its proceeds, by express contract or necessary implication, for the payment of such debts as she may create, or the discharge of any contract she may make, for her own use and benefit; and her husband's concurrence is necessary only where a conveyance is required.

Husband and wife executed a note, which recited that it was for materials, furnished at the special instance and request of the wife, to be "used in the necessary repair of her house." *Held*—That the wife's separate estate may be subjected to the payment of the debt.

BROWN & BROWN FOR APPELLANT.

1. The separate estate of a married woman may be subjected to the payment of a promissory note executed by her, the execution of the note being sufficient evidence of her intention to charge her separate estate. (1 B. Mon., 293; 10 B. Mon., 322; Burch and Wife v. Breckinridge, &c., 16 B. Mon., 487; Bell & Terry, &c., v. Kellar, 13 B. Mon., 383.)

2. If other circumstances than the mere execution of the note are necessary to evidence the wife's intention to charge her separate estate, the fact that the materials were furnished at the special instance and request of the wife, and used in the necessary repairs of her separate estate, and the insolvency of her husband are sufficient to evidence her intention to charge her separate estate. (Hanley & Co. v. Downing, 4 Met., 96.)

3. Section 17 of chapter 52 of the General Statutes relates to the same subject-matter as section 17 of chapter 47 of the Revised Statutes, and, therefore, repeals the latter. (Broaddus' Devisees v. Broaddus' Heirs, 10 Bush, 308.)

4. The second paragraph of section 17 of chapter 47 of the Revised Statutes applies only to separate estates created before the enactment of the Revised Statutes.

L. T. MOORE AND L. C. RICKETTS FOR APPELLEES.

1. As to the powers of a married woman with reference to her separate estate prior to the adoption of the General Statutes, see Daniel v. Robinson, 18 B. Mon., 308; Williamson v. Williamson, 18 B. M., 385; Hanley v. Downing, 4 Met., 96; Stacker v. Whitlock, 3 Met., 244; Stewart v. Wilder, 17 B. M., 59; Lewis v. Harris, 4 Met., 356; Dent v. Breckinridge, 1 Duv., 246; Gatewood v. Bryan, 5 Bush, 509; Revised Statutes, chapter 47, article 4, section 17; 2 Stanton's Revised Statutes, 32; Myers' Supplement, 728.

2. Under the General Statutes a married woman has no power to bind her separate estate except, perhaps, by mortgage. (General Statutes, chapter 52, article 4, section 17.)

    In the case of Hackett, &c., v. Metcalf, &c., 6 Bush, 352, the separate estate and the right of the wife to trade in her own name were conferred by deed.

JUDGE HARGIS DELIVERED THE OPINION OF THE COURT.

On the 17th day of January, 1877, Mrs. Franziska Bruning, in conjunction with her husband, executed to the appellants the following note: "For lumber and other building materials furnished at the special instance and request to the undersigned Franziska Bruning, used in the necessary repair of her house, situated in or near Catlettsburg, Kentucky, we, the said Franziska Bruning and F. Bruning, her husband, promise to pay to the order of Mockabee & Co., six months after date, the sum of one hundred twenty-two and thirty-one hundredth dollars, with six per cent. interest after maturity until paid.

        (Signed)              "F. BRUNING.

                       "FRANZISKA BRUNING."

The appellants instituted an ordinary action on the note, and obtained judgment against the husband therefor, on which execution was issued, and returned "no property found." They then brought this suit in equity, seeking to subject to the payment of the note the separate estate of the wife in certain real property, for the improvement of which the lumber and building material named in the note were bought. The allegations of the petition are sufficient to constitute a cause of action, if the wife can, under our present statute, bind her separate estate in the manner and for the purpose specified in the writing quoted. This, therefore, is the essential proposition to be decided, as upon its determination depends the validity of the cause of action alleged in the petition. A demurrer was sustained to the petition, and from a judgment dismissing it the appellant has appealed.

At common law a married woman is liable for frauds and torts which are not directly connected with contract, and which do not form the means of effectuating the contract, but she is incapable of binding herself by a contract, express or implied. And this disability stood as a shield to her from all liability growing out of any contract she might make, until the doctrine of separate use, evolved by courts of equity from cases which sprang out of efforts of persons to secure independent incomes to married women, by settling real property to their separate use, so qualified her general incapacity as to render her acts in the nature of a contract binding on her separate estate. And this doctrine, though irregular and fragmentary in its development, has grown to such perfection as to include

personal estate by unwritten dedication, and embraces
every act of the wife which, by common intendment,
may have been done with the purpose of binding her
separate estate. The extremity, however, of this doc-
trine of courts of equity, caused many of the States to
engraft upon it statutory modifications, which are so
dissimilar as to furnish but little light to the inquirer
after system and permanent rules governing the sub-
ject.

Leaving other fields of statutory enactment un-
touched, we find in this State that the act of February
23, 1846, is the foundation of the principal authority
on the question. Under that act it was held that any
contract of a married woman would bind her separate
estate, if it could be determined by the contract and
her situation that she so intended. The indorsement
of a note, or becoming surety upon it, when she had
none but separate estate, was held, under this rule, to
be binding upon it, although the contract embraced no
express or necessarily implied promise, from its terms,
that her separate estate should be bound. Experience
taught that the separate estate of a married woman,
controlled by this doctrine, was often diverted from the
purposes it was created to subserve, and in many in-
stances became the prey of the husband's recklessness
or improvidence. Hence it was provided in the Re-
vised Statutes, in the year 1852, that the separate
estate of a married woman should not be sold or en-
cumbered without the aid of a court of equity, and
then only for the purpose of exchange and reinvest-
ment. This statute was construed to mean that she
could not bind her separate estate for debts growing

out of her contracts. The restrictions contained in this statute operated, in a great measure, in many instances, to deprive the married woman of the substantial enjoyment of the property dedicated to her sole and separate use. The mode of sale was cumbersome. And the requirement that in all cases an exchange or reinvestment should be made, under the supervision of the chancellor, became to a great extent merely arbitrary, and inconsistent with the best interests of the *cestui que use.* And in addition to these objections, the legal costs, attorneys' fees, and delays incident to a proceeding to sell, became burdenous, and were the unreasonable results of an extreme notion embodied in the statute, that the full enjoyment of the use had better be curtailed than to leave the alienation and management of the wife's separate estate subject to her binding power and the unrestrained influence of her husband. And for the purpose of facilitating alienation, security against the husband's imprudence or selfishness, and to enable the wife to enjoy her separate estate, which is generally, if not in every case, created for her maintenance and comfort, the statute last named was abrogated, and in lieu thereof it was provided by section 17, article 4, chapter 52, General Statutes, that "separate estates and trust estates conveyed or devised to married women may be sold and conveyed in the same manner as if such estates had been conveyed or devised absolutely, if there be nothing in the deed or will under which they are held forbidding the same, and if the trustee and husband unite with the wife in the conveyance. But her interest shall be the same in the proceeds as it was in the estate."

If there be nothing in the will or deed creating separate estate interdicting or prescribing the manner of its sale or conveyance, such estates may be sold and conveyed as absolute estates, the husband or trustee, if there be one, uniting in the conveyance. This law enables the wife to make the contract of sale, but before she can perform her contract to convey, the husband's consent must be obtained, and he must unite in the deed as well as the trustee. The limitation on her power of conveyance is intended to afford her the advice and protection of her husband against imposition and inconsiderate sales, which was supplied by the court under the Revised Statutes, and to render this intent effectual, the husband's concurrence in the conveyance is made essential to its validity, and he is left free to act according to his own judgment. And looking further to her interest, while thus expanding her rights, the Legislature intending practically and fully to carry out the purpose of the grantor or devisor of such estates, and devote them to their real object, gave to her the same interest in the proceeds after sale or exchange as she held in the estate before alienation. Thus the purchasing power of her separate estate is rendered valuable to her, and its use by her is guarded so long as the estate, or the proceeds arising from its alienation, remains in existence.

Separate estate of a married woman, and the proceeds resulting from the alienation of such estates under the present statute, are subject to her exclusive control, independent of her husband, except to the extent that he may refuse to join her in their conveyance; and she may dispose of them as she pleases,

restricted alone by his non-concurrence where a conveyance may be necessary.

There is nothing in the statute *supra* changing the nature of her interest in separate estate, or its proceeds, from what it was under the known principles of equity which were recognized in this State before the adoption of the Revised Statutes. Nor is there any prohibition in the letter or necessary operation of the statute against her power to bind her separate estate for debts created for her own use and benefit ; but the whole force and restrictions of the statute fortify the construction that the Legislature intended to restore her rights in and control over separate estate, as they existed before the adoption of the Revised Statutes, subject to the restrictions we have mentioned, and her inability to bind it for her husband's debts, or the debts of other persons not contracted for her sole use and benefit, or to subserve the same objects for which the separate estate was created and sought to be bound by her contract.

We conclude, therefore, that she may, by express contract, or by necessary implication, to be derived from the terms of her contract, and the use and purpose to which any property or thing of value obtained under, or by reason of it, is devoted, bind her separate estate or its proceeds for the payment of such debts as she may create, or the discharge of any contract she may make, for her own use and benefit, and thus accomplish the substantial objects of the devisor or grantor of such estates, and insure to the wife their full and exclusive enjoyment, without permitting her to violate the plainest principles of justice, or become the prey

of improvident husbands or importunate debtors or friends.

Wherefore, the judgment is reversed, and cause remanded with directions to overrule the demurrer, and for further proper proceedings.